UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAL AVERY,

    Plaintiff,

v.

Case No. 10-10447

HONORABLE DENISE PAGE HOOD

J. MICHAEL TAYLOR, DWAYNE
CRAWFORD, KEYONN WHITFIELD,
CHRISTOPHER KURISH, NICHOLAS
KURISH, MICHAEL ZARATE, and
SAMUEL LENTINE,

    Defendants.

_____/

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT,
DENYING MOTION FOR SANCTIONS,
DISMISSING J. MICHAEL TAYLOR AND SETTING
FINAL PRETRIAL AND TRIAL DATES**

**I.   INTRODUCTION**

This matter is before the Court on a Motion for Sanctions and Motion for Summary Judgment. Responses and replies have been filed and a hearing held on the matter.

On November 17, 2009, Plaintiff Jamal Avery filed the instant action before the Wayne County Circuit Court, State of Michigan, which was removed to this Court on February 2, 2010. The Defendants are Michigan State Troopers: J. Michael Taylor,[1] Dwayne Crawford, Keyonn Whitfield, Christopher Kurish, Nicholas Kurish,[2] Michael Zarate and Samuel Lentine. The Complaint alleges four counts: Violation of Plaintiff's Constitutional Rights under the Fourth and

---

[1] A Suggestion of Death was filed as to J. Michael Taylor (Doc. No. 13). No amendment to the Complaint was filed to add the Estate of J. Michael Taylor. The Court dismisses Defendant J. Michael Taylor from this action.

[2] No Answer or appearance by counsel has been filed on behalf of Nicholas Kurish.

Fourteenth Amendments–Excessive Force (Count I); Violation of Plaintiff's Fourth Amendment Right against Malicious Prosecution (Count II); Assault and Battery (Count III); and Malicious Prosecution (Count IV). A Stipulation and Order was entered dismissing the malicious prosecution claims in Counts II and IV. (Doc. No. 29) The remaining claims are the Excessive Force claim (Count I) and Assault and Battery[3] (Count III).

On May 3, 2008, Avery went with friends, Maultees Hill and Delano Dumas, to Windsor, Canada. (Avery Dep., p. 31) They went to a few bars in Canada. After his third beer, Avery claims he stopped drinking because he lost his wallet and he did not have any more money. (Avery Dep., pp. 36-37) Avery and his friends left Canada after 2:00 a.m., returning to the United States via the Detroit-Windsor tunnel. (Avery Dep., pp. 36, 39) Dumas was driving a blue Volvo with Hill in the front passenger seat and Avery in the back seat behind Hill. (Avery Dep., pp. 39-40) They were on the Lodge Freeway when they came upon an accident. Trooper Crawford instructed Dumas to stop and wait for the wrecker to clear. (Avery Dep., pp. 50-51) Dumas asked Trooper Crawford about getting by the scene, and after words were exchanged between the two, a verbal altercation ensued between Dumas and Trooper Crawford. (Avery Dep., p. 53) Dumas drove past the accident scene at which time Crawford radioed other Troopers to find and pull over the blue Volvo. (Crawford Dep. at 14)

Troopers C. Kurish and Whitfield pulled over the blue Volvo. (Kurish Dep., p. 13) Trooper C. Kurish went to the driver's side of the blue Volvo, while Whitfield went to the other side. (Kurish Dep., p. 14) Trooper C. Kurish informed Dumas he was being pulled over for not having his seatbelt buckled even though Avery claims Dumas had his seatbelt fastened. (Avery Dep., p.

---

[3] No summary judgment motion was filed on the Assault and Battery claim.

59) Dumas was asked to produce his driver's license which he could not immediately find. (Avery Dep., p. 59) Trooper C. Kurish removed Dumas from the blue Volvo, handcuffed him, and placed him in C. Kurish's police vehicle. (Kurish Dep., p. 16) Dumas' blood alcohol level was .05. (Kurish Dep., p. 18)

Troopers Crawford and Taylor arrived at the scene at 3:21 a.m. (Crawford Dep., p. 30) Avery claims that Trooper Taylor approached the blue Volvo and threatened him with a shotgun. (Avery Dep., pp. 61-62) Words and profanities were exchanged between Avery and the Troopers at ths scene. (Avery Dep., p. 72) Avery exited the blue Volvo voluntarily and he was handcuffed by Trooper Whitfield. (Avery Dep., p. 75) Avery and Hill were then placed on the pavement against the embankment. (Video, at 3:23:30) Avery thereafter calmed down. (Crawford Dep., p. 29; Zarate Dep. p. 30) A third police vehicle arrived occupied by Troopers Zarate and Lentine. (Crawford Video at 3:25:06) Avery complained to Zarate that his handcuffs were too tight. (Avery Dep., p. 125) Whitfield walked over to Avery and squeezed the handcuffs tighter which Avery claims caused a bruised nerve and numbness. (Avery Dep., p. 126)

The blue Volvo was searched and nothing was found. (Whitfield Dep., p. 39) C. Kurish performed a search on the Law Enforcement Information Network (LEIN) to determine whether Avery and his friends had criminal records and none were found. (Kurish Dep., p. 24) Trooper Zarate informed Avery there was no cause to arrest him, removed his handcuffs and told him to climb up the freeway embankment, indicating the blue Volvo was going to be impounded. (Zarate Dep., pp. 30, 45; Avery Dep. pp. 85-86, 89) Avery refused to climb the embankment, not wanting to have to walk home and not wanting to leave his friends. (Avery Dep., p. 89) Avery asked what the alternative to climbing the embankment was and Trooper Zarate told him that he would be

arrested. (Zarate Dep., p. 47) Avery told Trooper Zarate he would rather be arrested than climb the embankment and walk home. (Zarate Dep., p. 48) Avery asked Trooper Zarate twice to arrest him. (Avery Dep. pp. 90-91) Trooper Zarate then grabbed Avery by the right arm and choked him. (Avery Dep., p. 91) Avery deflected Trooper Zarate's second strike. (Avery Dep., p. 91) Avery and Trooper Zarate wrestled, at which time, Trooper Lentine used the Taser on Avery. (Avery Dep., p. 95) The taser did not work so Trooper Lentine helped Trooper Zarate by throwing Avery down to the ground. (Avery Dep., p. 95) Trooper Zarate held Avery down on the ground and after Avery was subdued, Trooper Whitfield knelt down beside him and punched Avery around his eye. (Every Dep., p. 101) Avery was then placed in handcuffs, lifted to his feet and slammed onto the hood of the police vehicle by Trooper Zarate. (Crawford Video at 3:38:05) Troopers Zarate and Lentine placed Avery in the back of their vehicle, drove to the Michigan State Police post and placed Avery in a cell.

Avery was released within the hour and asked to file a complaint form. (Avery Dep., p. 119) The Post was out of complaint forms and he was told to file a complaint with the Detroit Police Station. The Detroit Police told Avery to return to the Post to file his complaint, which he did and discussed the events with a Lieutenant at the Post. (Avery Dep., pp. 114, 121) Photos and medical records from the Henry Ford Hospital show that Avery suffered swelling and bruising around his right eye, contusion to the eye, had an abrasion to the left forehead, subconjunctival hemorrhage and neck pain. (Response, Exs. F and G)

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary

4

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

    **B.**    **Qualified Immunity**

        **1.**    **Law**

Defendants Crawford, Whitfield, C. Kurish, Zarate and Lentine move for summary judgment asserting they are entitled to qualified immunity. Avery responds that the motion should be denied because these Defendants used excessive force on Avery and/or failed to intervene against the use of excessive force on Avery.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The Supreme Court in *Saucier v. Katz* instituted a two-step inquiry to determine qualified immunity which inquiry was to be performed sequentially. In *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court abandoned the requirement that the inquiry must be performed sequentially. Although courts are free to consider the questions in whatever order is appropriate, the Supreme Court ruled that the two questions announced in *Saucier v. Katz* remain good law and that it is often beneficial to engage in the two-step inquiry. *Pearson,* 555 U.S. at 236.

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met: (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and

(3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987).  As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim.  *Graham v. Connor,* 490 U.S. 386, 393-394 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).

If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity.  *Saucier,* 533 U.S. at 201.  If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition.  *Id.*  Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818.  The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  "Reasonableness" is a question of law to be decided by the trial court.  *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993).

"The right to be free from excessive force is a clearly established right.  Excessive force claims are to be analyzed under the Fourth Amendment's 'objectively reasonable' test, not under a substantive due process standard." *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386 (1989)).  The Court addresses Avery's five-identified incidents of excessive force to determine whether Avery's clearly established right to be free from excessive force has been violated and if so whether the officers are entitled to qualified immunity.

### 2.     Excessive Handcuffing Claim against Whitfield

Avery's first excessive force claim is that Trooper Whitfield handcuffed Avery too tightly and then further tightened the cuffs after Avery complained that the cuffs were too tight. The Fourth Amendment prohibits unduly tight or excessively forceful handcuff during the course of a seizure. *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). To create a genuine issue of material fact to survive summary judgment on an excessive handcuffing claim, a plaintiff must offer sufficient evidence that: 1) he complained the handcuffs were too tight; 2) the officer ignored those complaints; and 3) the plaintiff experienced some physical injury resulting from the handcuffing. A defendant officer may still be entitled to summary judgment on the basis of qualified immunity if it would not be clear to a reasonable officer that he was violating plaintiff's rights. *Id.* at 401.

Avery presented sufficient evidence to show an excessive handcuffing claim in order to survive summary judgment. Avery testified that he complained that his handcuffs were "too tight" to Trooper Zarate. (Avery Dep., p. 125). Trooper Zarate then told Trooper Whitfield that "[you] put the cuffs on too tight" but instead of loosening the cuffs, Avery testified that Trooper Whitfield walked over to him and "squeezed the cuffs tighter on me," causing a bruised nerve and numbness on Avery's thumb which lasted for a "month and a half." (Avery Dep., pp. 125-26) Trooper Whitfield's action in making the cuffs tighter, as testified to by Avery, was not an action a reasonable officer in the same situation would have made. Trooper Whitfield is not entitled to qualified immunity on Avery's excessive handcuffing claim.

### 3.     Choke Claim against Zarate

Avery asserts that Zarate choked him in violation of his right to be free from excessive force.

"[T]he reasonableness of an officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Graham,* 490 U.S. at 396. "[C]areful attention the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Avery has shown sufficient facts to survive summary judgment on this claim. Both Avery and Zarate testified that Avery was told to climb up the freeway embankment and leave the scene after it was determined there were no outstanding warrants on Avery. (Avery Dep., pp. 85-86; Zarate Dep., pp. 30, 45) Avery refused to do so claiming that he did not want to walk by himself at 3:30 a.m. and leave his friends. (Avery Dep., p. 89) Avery instead asked to be arrested, placing his wrists together in front of his body to invite a handcuffing. (Avery Dep., pp. 90-91) Instead, AVERY testified that Zarate grabbed his right arm and with Zarate's left arm, choked Avery before engaging Avery's entire body. (Crawford Video at 3:36:19-21) Avery testified that after being choked the first time by Zarate, Avery deflected Zarate's second strike. (Avery Dep., at 91) Defendants argue that Zarate was defending himself after Avery first made contact with Zarate and that the video supports their version of the contact. A review of the video, which is grainy, does not clearly show whether Avery attacked Zarate in the first instance. Avery's testimony that he requested to be arrested instead of having to walk away from the scene at 3:30 in the morning and that Zarate initially choked him after his request, create a genuine issue of material fact that his right to be free from excessive force was violated. Avery was not attempting to flee; to the contrary, he requested to be arrested. Trooper Zarate's initial choking of Avery was not objectively reasonable in light of Avery's request to be arrested. *Griffith v. Coburn,* 473 F.3d 650, 657 (6th Cir.

9

2007)(Choking an individual without provocation is excessive force which is objectively unreasonable.). Trooper Zarate is not entitled to qualified immunity.

### 4. Taser Use Claim against Lentine

Avery asserts that Lentine's use of the Taser on him was excessive force given that Avery was not attempting to flee or resist arrest. Sixth Circuit precedent dating back to 1994, indicates that spraying a suspect with mace–then the equivalent of later-developed sprays and electroshock devices–can amount to excessive force if used unreasonably against a non-resisting suspect. *Schmalfeldt v. Roe,* 412 Fed.Appx. 826, 828 (6th Cir. Feb. 23, 2011)(citing *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir. 1994)).

Avery has presented sufficient facts to create a genuine issue of material fact that Lentine's use of the Taser was excessive force. It was after Avery requested to be arrested instead of walking away from the scene that the Taser was used on him by Lentine. Avery claims that the video of the incident shows that Trooper Crawford stated right before the use of the Taser, "What did I tell you ... he's gonna zap his ass." (Video, 3:36:29) As Trooper Zarate wrestled with Avery, Trooper Lentine approached the two and deployed the Taser into Avery's chest. (Video, 3:36:30) Although Defendants argue that at this point, Avery was not cooperating with the Troopers, given that Avery requested to be arrested there is a genuine issue of material fact whether the use of the Taser was necessary. The use of a Taser on an individual is unreasonable if not necessary. Trooper Lentine is not entitled to qualified immunity.

### 5. Face Punch Claim against Whitfield

Avery claims that Trooper Whitfield's punch to his face after Avery was subdued was excessive force. After Avery had asked to be arrested instead of leaving the scene, he was subdued

10

on the ground by the Trooper. Avery testified that Trooper Whitfield knelt down beside him saying, "shut the fuck up, shut the fuck up," while punching him around his eye. (Avery Dep., p. 101) Trooper Whitfield testified that he had applied a "mandibular angle" technique to Avery's neck to subdue him. (Whitfield Dep., p. 59) It is clearly established that putting exceptional pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated, constitutes excessive force. *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 904 (6th Cir. 2004). Avery has presented sufficient evidence to create a genuine issue of material fact that Trooper Whitfield used excessive force when he punched Avery repeatedly who was already subdued on the ground. Given that it was Avery who requested to be arrested, any force used to arrest him would be unreasonable. Trooper Whitfield is not entitled to qualified immunity.

### 6.     **Slamming Claim against Zarate**

Avery claims that Trooper Zarate slammed him onto the hood of the police vehicle when he was already subdued and handcuffed. After Avery had asked to be arrested, placed on the ground, handcuffed and then lifted to his feet, Avery claims Trooper Zarate forcefully slammed him onto the hood of the police vehicle. (Video, 3:38:05) Avery has presented sufficient facts to avoid summary judgment on this claim. It was Avery who requested to be arrested so any force used to arrest him, including slamming Avery onto the police vehicle was not reasonable. Trooper Zarate is not entitled to qualified immunity.

### 7.     **Failure to Intervene Claim against Crawford and C. Kurish**

Avery argues that Troopers Crawford and C. Kurish's failure to intervene during the use of excessive force by the other troopers is in violation of his Fourth Amrendment right to be free from excessive force. An officer who fails to act to prevent the use of excessive force may be held liable

when 1) the officer observed or had reason to know that excessive force would be or was being used; and 2) the officer had both the opportunity and the means to prevent the harm from occurring. *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997).

Avery asserts that it was the video on Crawford's police vehicle which taped the incident. Crawford's voice could be heard saying, "He keeps fucking with Keyonn [Whitfield], he's going to be in trouble," and then "What did I tell you ... he's gonna zap his ass." (Video 3:36:10, 3:36:29) Trooper C. Kurish was in a vehicle with Trooper Whitfield. Trooper Kurish stayed in the vehicle when Avery was being arrested. (Kurish Dep., pp. 24, 27) When interviewed by the Michigan State Police Internal Affairs on May 23, 2008, Trooper C. Kurish testified that he saw Trooper Lentine use the Taser on Avery and then Avery fell to the ground with Troopers Lentine and Zarate. (Resp., Ex. H) Avery has shown that Troopers Crawford and C. Kurish observed or had reason to know that excessive force would be or was being used on Avery. Avery has also shown that Troopers Crawford and C. Kurish had the opportunity and the means to prevent any use of excessive force on Avery by the other Troopers since Avery was the one who requested to be arrested. All the troopers were in close proximity to Avery. Avery has presented sufficient evidence to defeat summary judgment on the claim that Troopers Crawford and C. Kurish failed to prevent the use of excessive force. Given that Avery requested to be arrested, a reasonable officer in Troopers Crawford and C. Kurish's positions would have known that they were required to intervene during any use of force to arrest Avery. Troopers Crawford and C. Kurish are not entitled to qualified immunity.

### 8. Avery's Injuries

Defendants argue that because Avery suffered "modest injuries," on his claims of excessive

force the jury would find against Avery. The extent of the injury is not relevant since the Sixth Circuit has declined to adopt a *de minimis* injury requirement for excessive force claims under the Fourth Amendment. A plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Morrison,* 583 F.3d at 407. Here, Avery presented testimony of his injuries, as well as photographs and medical records. Defendants' summary judgment motion based on the "modest" extent of Avery's injuries is denied.

### C. Motion for Sanctions Based on Defendants' Spoliation of Evidence

Avery seeks sanctions under Rule 37(b)(2) of the Rules of Civil Procedures against Defendants for spoliation of evidence–the video and audio of the incident. Avery claims that there is missing footage on the video that was produced during discovery. Avery also claims Defendants failed to preserve the audio/video recording from the other two vehicles at the scene. Avery cites to a different case involving Trooper Kurish where Trooper Kurish also failed to produce a video recording of an incident. *See, Kamel v. Whitfield,* Case No. 09-11782 (E.D. Mich.)(O'Meara).

In response, Defendants argue that sanctions are not appropriate in this case because they have not violated any court order regarding the production of the videos. As to the two video tapes Avery alleges were not preserved, Troopers Kurish and Zarate explained in their depositions why no videos of the incident were generated in their cars. Trooper Kurish testified that he had ejected the tape in the course of investigating another case when he received a call to assist another trooper and did not place another video tape in his car. (Kurish Dep., pp. 20-21) Trooper Zarate testified at his deposition that his car was the last to arrive at the scene and he was in back of a large Police vehicle, a Tahoe. Trooper Zarate indicated he probably did not switch on his video when he came

13

on the scene. (Zarate Dep., pp. 24-26) Regarding the gap on the video of the incident produced to Avery by Defendants, Defendants explain that the gap in the video happens during the traffic stop, but not at a critical or important moment of the incident. The most probative part of the video was preserved. Defendants claim that none of the witnesses testified about anything crucial that occurred before the altercation. Defendants argue that no sanctions should be issued as to the video tapes.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.,* 2009 WL 998402, at *1 (E.D. Mich. Apr. 14, 2009)(quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)) Spoliation is "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *Beck v. Haik,* 377 F.3d 624, 641 (6th Cir. 2004)(overruled on other grounds). The Sixth Circuit, in an *en banc* decision, joined its sister circuits in ruling that spoliation of evidence issue is governed by federal law and is evidentiary in nature. *Adkins v. Wolever,* 554 F.3d 650, 652 (6th Cir. 2009)(e*n banc)*. The district court has broad discretion in crafting a proper sanction for spoliation, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence. *Id.* at 652-53. A proper sanction will serve the purpose of leveling the evidentiary playing field and sanctioning the improper conduct. *Id.* at 652 (quotation omitted). Any adverse inference from spoliation, while not entirely dependent on bad faith, is based on the spoliator's mental state. *Joostberns v. United Parcel Serv., Inc.,* 166 Fed. Appx. 783, 797 (6th Cir. 2006)(citation omitted). The standards of conduct regarding the duty to preserve evidence have evolved in recent years. The Sixth Circuit has required a showing of bad faith to justify an adverse inference from spoliation of evidence. *Tucker v. General*

14

*Motors Corp.,* 1991 WL 193458, at *2 (6th Cir. Sept. 30, 1991)(unpublished)(A court may not allow an inference that a party destroyed evidence that is in its control, unless the party did so in bad faith.) "When a party is found to have deliberately destroyed evidence that is important to the opposing party's ability to present a claim or defend itself from a claim, the court has the discretion to impose sanctions on the spoliating party." *Chrysler Realty Co., LLC v. Design Forum Architects, Inc.,* 2009 WL 1872444 (6th Cir. Jun. 30, 2009)(unpublished).

In this case, Avery has not alleged that any spoliation of the evidence was made in bad faith. It is true that a litigant has the duty to preserve evidence; however, the court may not allow an inference that a party destroyed evidence at trial unless bad faith is shown. If relevant, at trial, the Court will allow testimony regarding the video tapes. However, the Court will not give the spoliation instruction presented by Avery since bad faith has not been shown or alleged in this instance.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment **(Doc. No. 18, filed 2/2/2011)** is DENIED. Counts I (Excessive Force) and III (Assault and Battery) remain.

IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions **(Doc. No. 15, filed 1/20/2011)** is DENIED.

IT IS FURTHER ORDERED that Defendant J. Michael Taylor is DISMISSED.

IT IS FURTHER ORDERED that the **Final Pretrial Conference is set for Monday, November 21, 2011, 3:15 p.m.** The proposed *Joint* Final Pretrial Order as set forth in E.D. Mich. LR 16.2, be submitted by November 14, 2011. **Trial is scheduled for Tuesday, January 10, 2012, 9:00 a.m.**

                                      s/Denise Page Hood  
                                      **United States District Judge**

**Dated: September 30, 2011**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2011, by electronic and/or ordinary mail.**

                                      s/LaShawn R. Saulsberry  
                                      **Case Manager**